INMAN, Judge.
*719 *609 Duval Lamont Bowman ("Defendant") appeals from a final judgment and commitment following a jury verdict finding him guilty of first-degree murder, attempted armed robbery, and possession of a *610 firearm by a felon. Defendant argues that the trial court erred by: (1) failing to exclude statements he made during a police interrogation in which he was denied his constitutional right to an attorney; (2) violating Defendant's constitutional right to cross-examine the State's principal witness; (3) allowing the State to impeach its own witness with a subsequent witness; and (4) allowing a detective to testify as an expert without properly qualifying the detective as such. During the pendency of his appeal, Defendant filed a motion for appropriate relief with this Court arguing that his constitutional right to due process was violated because the State permitted its principal witness to falsely testify regarding whether she would benefit in exchange for her testimony against Defendant.
After careful consideration, we hold that the trial court committed a constitutional error in restricting Defendant's cross-examination of the State's principal witness and that the State has failed to show that the error was harmless beyond a reasonable doubt; therefore, we vacate the trial court's judgment and remand for a new trial. Defendant's motion for appropriate relief is dismissed as moot.
Factual and Procedural History
The State's evidence at trial tended to show the following:
In the early morning of 23 February 2014, Defendant borrowed a friend's vehicle and went to the home of Lakenda Malachi and her fiancé Anthony Johnson. Defendant, Malachi, and Johnson were all associates in the drug business.
When Defendant arrived at Malachi's house, he confronted Johnson about money Johnson allegedly owed Defendant. Malachi testified that she witnessed Defendant pointing two guns at Johnson, at which point Defendant said: "Y'all did me dirty." As Malachi ran to the next room she heard shots being fired. Defendant then demanded that Malachi give up the money. She locked herself in the other room. Defendant kicked the door open and Malachi told him that she would find the money.
As Malachi began looking for the money, Defendant starting hitting her with the guns and told her that he was going to kill Johnson. Malachi ran outside and hid in the bushes. She reached a neighbor's door and was able to make two phone calls: the first was to a male friend named "Royal Highness Salley," and the second was to another male friend named Kasim Washington. After Malachi made her phone calls, the neighbor called 9-1-1.
*611 Approximately ten minutes later, police arrived at the neighbor's house to find Malachi crying and mumbling. Police found Johnson in Malachi's house lying face down in the living room without a pulse. EMS pronounced Johnson dead at the scene. He had been shot twice in the back and once in the left leg and died as a result of the wounds to his back.
Defendant was apprehended in New York by United States Marshals and returned to North Carolina. On 28 March 2014, Detectives interviewed Defendant. Defendant denied any involvement in Johnson's death. Defendant was indicted on 4 May 2015 for murder and on 4 January 2016 for possession of a firearm by a felon. On 6 June 2016, a superseding indictment was filed for first-degree murder along with an indictment for attempted robbery with a dangerous weapon.
Defendant's case went to trial in July 2016. The State presented no physical evidence linking Defendant to the shooting but argued that Malachi's eyewitness testimony established his guilt. On 27 July 2016, the jury found Defendant guilty on all charges and the trial court sentenced Defendant to life imprisonment without the possibility of parole. Defendant appealed in open court.
*720 Analysis
We address only one of Defendant's arguments on appeal, which we hold entitles him to a new trial. Defendant contends that the trial court erred by limiting the scope of his cross-examination of Malachi, preventing him from adequately questioning her regarding pending drug charges in Guilford County for which she could receive a favorable plea offer contingent on her testimony against Defendant. After careful review of the record and applicable law, we agree.
"Under the Confrontation Clause of the Sixth Amendment to the United States Constitution, an accused is guaranteed the right to be confronted with his adverse witnesses." State v. Ward , 354 N.C. 231, 260, 555 S.E.2d 251, 269 (2001) (citing State v. McNeil , 350 N.C. 657, 677, 518 S.E.2d 486, 498 (1999) ). "This right, however, is not without limits, and the trial court 'retain[s] broad discretion to preclude cross-examination that is repetitive or that is intended to merely harass, annoy or humiliate a witness.' " Id. at 260, 555 S.E.2d at 270 (quoting State v. Mason , 315 N.C. 724, 730, 340 S.E.2d 430, 434 (1986) ).
It is well established that pending criminal charges or any criminal convictions for which a witness is currently on probation are generally permissible topics for cross-examination because "the jury is entitled to *612 consider, in evaluating a witness's credibility, the fact [that] the State has a 'weapon to control the witness.' " State v. Ferguson , 140 N.C. App. 699, 705, 538 S.E.2d 217, 222 (2000) (quoting State v. Prevatte , 346 N.C. 162, 164, 484 S.E.2d 377, 378 (1997) ).
In Prevatte , the North Carolina Supreme Court held that the trial court committed a constitutional error by not allowing the defendant to ask certain questions during cross-examination of the State's principal witness. 346 N.C. at 163, 484 S.E.2d at 378. There, the jury found the defendant guilty of, among other things, first-degree murder. Id. at 164, 484 S.E.2d at 378. At the time of his testimony, the State's principal witness, an eyewitness to the shooting, "was under indictment in another county on nine charges of forgery and uttering forged checks." Id. at 163, 484 S.E.2d at 378. The Court noted that the other county in which the charges against the witness were pending "was under the same district attorney." Id. at 163, 484 S.E.2d at 378. Relying on the United States Supreme Court's decision in Davis v. Alaska , 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974), the North Carolina Supreme Court granted the defendant a new trial based on the trial court's failure to allow the defendant to question the State's primary witness about "whether [the witness] had been promised or expected anything in regard to the charges in exchange for his testimony in [the] case." Id. at 163, 484 S.E.2d at 378.
Similar limitations to cross-examination have been held not to be error when the pending charges were in a separate prosecutorial district from the district the witness was testifying in, and the defendant failed to present evidence of communication between the two prosecutorial districts. In State v. Murrell , 362 N.C. 375, 404, 665 S.E.2d 61, 80 (2008), the North Carolina Supreme Court distinguished Prevatte because the State's witness in Murrell was facing charges "in a different jurisdiction, and [the] defendant provide[d] no supporting documentation of any discussion between the two district attorneys' offices to demonstrate that [the witness's] testimony was biased in this respect." Id. at 404, 665 S.E.2d at 80. It follows that when considering whether a trial court has erred in limiting cross-examination about pending charges against a State's witness, the State's ability to use the pending charges to leverage the witness' testimony is essential.
Here, Defendant's trial counsel argued that an email exchange between prosecutors established a possible reduction of drug trafficking charges against Malachi in Guilford County in exchange for Malachi's testimony against Defendant in Forsyth County. Following a voir dire exchange, the trial court ruled that it would allow defense *721 counsel limited cross-examination of Malachi regarding her pending charges. *613 However, before the jury, the trial court limited defense counsel's questioning as follows:
DEFENSE COUNSEL: Isn't it true on that date, you were charged by the High Point Police Department with one count of trafficking in methamphetamine, one count conspiracy to traffic in methamphetamine, one count of trafficking in marijuana and one count of conspiracy to traffic in marijuana?
MALACHI: And what day-what date did you say?
DEFENSE COUNSEL: January 21st of 2015.
MALACHI: Yes, sir.
DEFENSE COUNSEL: And those charges are still pending, are they not?
MALACHI: Yes, sir.
...
DEFENSE COUNSEL: And this is in Guilford County?
MALACHI: Yes, sir.
...
DEFENSE COUNSEL: What, if anything, have you been offered from the State at this point regarding those pending charges?
MALACHI: I don't know nothing about that.
DEFENSE COUNSEL: So nothing has been finalized in Guilford County?
PROSECUTOR: Objection.
THE COURT: Sustained.
...
DEFENSE COUNSEL: What, if anything, do you hope to gain out of testifying here for the State with regard to those five pending charges?
MALACHI: Justice for Anthony Johnson.
DEFENSE COUNSEL: So you don't think you're going to get anything out of it for the charges you got?
*614 PROSECUTOR: Objection.
THE COURT: Sustained.
DEFENSE COUNSEL: Are you aware of any other considerations you might have for those pending charges right now?
PROSECUTOR: Objection.
THE COURT: Sustained.
The sustained objections limited the testimony beyond that which the trial court ruled it would allow in voir dire and precluded Defendant's counsel from establishing a possible bias in Malachi's testimony against Defendant. The State argues that the trial court properly sustained the objections because defense counsel's questions sought to undermine Malachi's credibility based simply on the fact that she was charged with drug crimes. This argument is unpersuasive, particularly in light of the fact that Defendant, who also testified, admitted to having engaged in drug dealing. Because Defendant presented evidence of communication between the districts, the trial court's limitation of Malachi's cross-examination was in error.
We must next determine whether the trial court's error requires a new trial. To avoid disturbing a jury verdict in a trial involving constitutional error, the State must prove that the error was harmless beyond a reasonable doubt. N.C. Gen. Stat. § 15A-1443 (2017). In the context of a trial court unconstitutionally limiting a criminal defendant's right to cross-examine a witness about pending charges against the witness, the North Carolina Supreme Court has explained that such error may be harmless when the witness is "not a principal witness for the State but [is] a corroborating witness[,]" and has been impeached through other means. State v. Hoffman , 349 N.C. 167, 180, 505 S.E.2d 80, 88 (1998).
Similar to Prevatte and unlike in Hoffman , the witness Defendant sought to cross-examine here was the State's principal eyewitness. There were no other witnesses to the shooting of Johnson, and the other evidence provided by the State was tenuous, *722 thereby making Malachi's testimony essential. The State argues that defense counsel's cross-examination was extensive, covering her timeline of events, the assault by Defendant, her phone calls from the neighbor's phone, and her inconsistent statements to medical providers, prosecutors, and police. However, the violation of the confrontation clause arises from Defendant's inability to question the witness specifically about the bias created by the pending charges-which the Prevatte court classified *615 as a "weapon to control the witness"-not from a generalized limited cross-examination. Prevatte , 346 N.C. at 164, 484 S.E.2d at 378. By not allowing defense counsel to inquire about Malachi's knowledge of plea negotiations or pending charges, Defendant was prevented from establishing a possible bias arising from the pending charges. The State has, therefore, failed to distinguish this case from Prevatte or demonstrate, as in Hoffman , that the error was harmless beyond a reasonable doubt. Accordingly, regardless of the extensiveness of the remaining permitted cross-examination of Malachi, the State here has failed to meet its burden of proving that the error was harmless.
Because Malachi was the State's principal and only eyewitness, there was evidence of communication between the two counties regarding Malachi's cooperation, and there was no physical evidence linking Defendant to the shooting, we conclude that the trial court erred in limiting defense counsel's cross-examination and that this error was not harmless beyond a reasonable doubt.
Conclusion
In light of the foregoing, we hold that the trial court erred by limiting defense counsel's cross-examination of Malachi and grant Defendant a new trial. We do not consider Defendant's other assignments of error, as the questions they pose may not recur at a new trial.
NEW TRIAL.
Judge STROUD concurs.
Judge DILLON dissents in separate opinion.